WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR. #212213
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #114441
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382-7300; Fax: (702) 382 2755

DONALD J. CAMPBELL (Admitted *Pro Hac Vice*)
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS (Admitted *Pro Hac Vice*)
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.  5:14-cv-05484 EJD<br><br>**DEFENDANT ZUFFA, LLC'S CONSOLIDATED REPLY TO PLAINTIFFS' OPPOSITION TO ZUFFA, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

| | |
|---|---|
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No. 5:14-cv-05591 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No. 5:14-cv-05621 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated, | Case No. 5:15-cv-00521 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated,

           Plaintiffs,

      v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

           Defendant.

Case No. 5:15-cv-01324 EJD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT ..............................................................................................................1

        A.      Plaintiffs' Opposition Does Not Explain How The Complaints Allege
                Facts That Support Plaintiffs' Extreme and Implausible Conclusions. ...............1

                1.      Plaintiffs' "Monopoly Broth" Theory Does Not Absolve Plaintiffs
                        of Adequately Pleading Facts Showing Anticompetitive Conduct. ...............3

        B.      Plaintiffs' Allegations Are Inadequate to Plead That the UFC's Conduct
                Resulted in Substantial Foreclosure. ...................................................................4

                1.      Plaintiffs Have Not Pled Facts Showing That Contracts with
                        Fighters Foreclosed Competition. ...................................................................5

                2.      Plaintiffs Have Not Pled Facts Showing That Zuffa's Contracts
                        With Venues, Sponsors, Media Outlets or Others Foreclosed
                        Competition. .....................................................................................................8

        C.      Plaintiffs' Opposition Confirms That Plaintiffs Have Failed to Plead
                Properly Defined Relevant Markets. .....................................................................9

                1.      Plaintiffs' "Elite" Market Definitions Are Improperly Subjective
                        and Indefinite. ..................................................................................................9

                2.      Plaintiffs' Opposition Makes Clear They Plead a Circular Single
                        Brand Market. .................................................................................................11

        D.      Plaintiffs Have Not Alleged Facts Plausibly Showing That the Grant of
                Ancillary Rights Caused Anticompetitive Harm. ...............................................12

        E.      Plaintiffs Do Not Establish That the Strikeforce Acquisition Has Caused
                Any Reduction in Competition in the Relevant Output Market. .........................13

        F.      Plaintiffs' Claim That They Adequately Alleged Anticompetitive Effects
                and Antitrust Standing Is Incorrect. ...................................................................14

III.    CONCLUSION .........................................................................................................15

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

i

**CASES**

*Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*,
No. C 08-01035 JSW, 2008 WL 4830740  (N.D. Cal. Nov. 6, 2008)....................5, 8

*Acosta v. Wells Fargo Bank, N.A.*,
No. C 10-9910JF (PVT), 2010 WL 2077209 (N.D. Cal. May 21, 2010)....................3

*Adidas Am., Inc. v. NCAA*,
64 F. Supp. 2d 1097 (D. Kan. 1999)........................................................11

*Allen v. Dairy Farmers of Am., Inc.*,
748 F. Supp. 2d 323 (D. Vt. 2010) .........................................................14

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
300 F.3d 620 (5th Cir. 2002) ..................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................9

*Ass'n for Intercollegiate Athletics for Women v. Nat'l Collegiate Athletic Ass'n*,
558 F. Supp. 487 (D.D.C. 1983) .............................................................11

*Barsky v. Spiegel Accountancy Corp.*,
No. 14-CV-04957-TEH, 2015 WL 580574 (N.D. Cal. Feb. 11, 2015)....................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................1

*Boisvert v. Li*,
No. 13-CV-01590 NC, 2014 WL 279915  (N.D. Cal. Jan. 24, 2014)........................3

*Carefusion Corp. v. Medtronic, Inc.*,
No. 10-CV-01111-LHK, 2010 WL 4509821 (N.D. Cal. Nov. 1, 2010)....................13

*City of Anaheim v. S. Cal. Edison Co.*,
955 F.2d 1373 (9th Cir. 1992) ..................................................................4

*City of Groton v. Connecticut Light & Power Co.*,
662 F.2d 921 (2d Cir. 1981) ....................................................................4

*Clarett v. Nat'l Football League*,
306 F. Supp. 2d 379 (S.D.N.Y. 2004) ......................................................10

*Continental Ore Co. v. Union Carbide & Carbide Corp.*,
370 U.S. 690 (1962)...............................................................................4

ii

Zuffa's Reply
ISO Mot. to Dismiss
Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*Delano Farms Co. v. Cal. Table Grape Com'n,*
    623 F. Supp. 2d 1144 (E.D. Cal. 2009) ................................................................ 10

*Doe v. Ariz. Hosp. and Healthcare Assoc.,*
    CV 07–1292–PHX–SRB, 2009 WL 1423378 (D. Ariz. Mar. 19, 2009) .................. 15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ................................................................................ 9

*Fox v. Piche,*
    No. C 08-1098 RS, 2008 WL 4334696 (N.D. Cal. Sept. 22, 2008) ....................... 6

*Gonzalez v. Planned Parenthood of Los Angeles,*
    759 F.3d 1112 (9th Cir. 2014) .............................................................................. 3

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,*
    106 F. Supp. 2d 406 (N.D.N.Y. 2000) .................................................................. 11

*In re Animation Workers Antitrust Litig.,*
    No. 14-CV-04062-LHK, 2015 WL 1522368 (N.D. Cal. Apr. 3, 2015) .................. 14

*In re Apple iPod iTunes Antitrust Litig.,*
    796 F. Supp. 2d 1137 (N.D. Cal. 2011) ................................................................ 13

*In re Century Aluminum Co Securities Litig.,*
    729 F.3d 1104 (9th Cir. 2013) .............................................................................. 14

*In re High-Tech Employee Antitrust Litig.,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................................................ 15

*In re NCAA I-A Walk-on Football Players Litig.,*
    398 F. Supp. 2d 1144 (W.D. Wash. 2005) ............................................................ 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
    990 F. Supp. 2d 996 (N.D. Cal. 2013) ............................................................. 12, 15

*In re Super Premium Ice Cream Distrib. Antitrust Litig.,*
    691 F. Supp. 1262 (N.D. Cal. 1988),
    *aff'd,* 895 F.2d 1417 (9th Cir. 1990) .................................................................. 10

*Int'l Boxing Club of N.Y. v. United States,*
    358 U.S. 245 (1959) .............................................................................................. 10

*JM Computer Services, Inc. v. Schlumberger Tech., Inc.,*
    1996 WL 241607 (N.D.Cal.1996) ...................................................................... 6, 7

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ............................................................................... 2

iii

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)......................................................................................................................13

*Masimo Corp. v. Tyco Health Care Grp.*, L.P.,
    No. CV 02-4770 MRP, 2004 WL 5907538 (C.D. Cal. June 10, 2004)......................................4

*Nat'l Assoc. of Freelance Photographers v. Assoc. Press*,
    No. 97 Civ. 2267(DLC), 1997 WL 759456 (S.D.N.Y. 1997) ...................................................12

*Novell v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ...............................................................................................13

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) .........................................................................................10

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ...................................................................................................8

*Pace Indus. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir.1987) ....................................................................................................14

*Paddock Publications, Inc. v. Chicago Tribune Co.*,
    103 F.3d 42 (7th Cir. 1996) .......................................................................................................7

*PNY Tech's, Inc. v. SanDisk Corp.*,
    No. 11-CV-04689-WHO, 2014 WL 2987322 (N.D. Cal. July 2, 2014) .................................6, 7

*PNY Techs., Inc. v. SanDisk Corp.*,
    No. 11-cv-04689-WHO, 2014 WL 1677521 (N.D. Cal. Apr. 25, 2014)....................................6

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    No. SACV 12-2102-JST ANX, 2013 WL 3936394 (C.D. Cal. July 30, 2013)....................7, 14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ......................................................................................................9

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    No. 12-CV-05847-WHO, 2013 WL 5694452 (N.D. Cal. Oct. 18, 2013) ..................................6

*Rock v. Nat'l Collegiate Athletic Ass'n*,
    No. 1:12-cv-1019-JMS-DKL, 2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) ........................10

*Safeway Inc. v. Abbott Laboratories*,
    761 F. Supp. 2d 874 (N.D. Cal. 2011)......................................................................................15

*Spinelli v. NFL*,
    --- F. Supp. 3d ---, No. 13 CIV 7398 (RWS), 2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015) ...14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................................................3

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

iv

*Tele Atlas N.V. v. NAVTEQ Corp.*,
   397 F. Supp. 2d 1184 (N.D. Cal. 2005) ................................................................6, 7

*Theatre Party Assoc. v. Shubert Organ., Inc.*,
   695 F. Supp. 150 (S.D.N.Y. 1988) ...........................................................................11

*United States v. Oracle Corp.*,
   331 F. Supp. 2d 1098 (N.D. Cal. 2004) ...................................................................10

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) ....................................................................................14

*United States v. Westinghouse Elec. Corp.*,
   648 F.2d 642 (9th Cir. 1981) ......................................................................................4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004).....................................................................................................4

*Washington v. NFL*,
   880 F. Supp. 2d 1004 (D. Minn. 2012).....................................................................12

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
   513 F. Supp. 1100 (E.D. Pa. 1981) .............................................................................4

## OTHER AUTHORITIES

11 Philip Areeda & Herbert Hovenkamp, Antitrust Law,
   ¶ 310c2 (3d ed. 2007) .................................................................................................4
   ¶ 1802g2 & n. 68 (3d ed. 2011) ..................................................................................7

*Does Monopoly Broth Make Bad Soup?*
   76 Antitrust L.J. 664 (2010) ........................................................................................4

Zuffa's Reply                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss          5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

# I.  INTRODUCTION

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007), the Supreme Court affirmed dismissal of antitrust claims alleging parallel conduct by regional telephone companies because the complaint had not plausibly alleged an illegal agreement, and the facts alleged were consistent with competitive unilateral conduct.  The Supreme Court concluded that such allegations could not justify the enormous expense of discovery in an antitrust case.  Similarly, in this case, Plaintiffs seek to impose enormous discovery burdens on Zuffa, LLC ("Zuffa") based on Complaints describing what the courts have explained is legal and competitive conduct by a firm building a successful business from the ground up, conduct that includes the use of exclusive contracts to protect risky investments.

To justify what will be a costly case, Plaintiffs' Opposition fails to explain how they have pled facts plausibly showing (1) any anticompetitive conduct by Zuffa, (2) that such conduct caused substantial foreclosure in any relevant market, or (3) that Plaintiffs suffered antitrust injury as a result of anticompetitive conduct.  Plaintiffs also ignore the factual allegations in their own Complaints and the judicially noticeable facts as to their own activities that flatly contradict the conclusions asserted in the Complaints.  Plaintiffs do little more than repeat implausible and conclusory allegations, *e.g.*, "perpetual" and "indefinite" exclusivity, locking up "key" sponsors, venues, and media outlets, "100% foreclosure."

Newly successful businesses that have taken a product from next to nothing to a mainstream success should not face inevitable and large discovery costs from allegations of "monopolization" such as here.  All of the actual facts alleged by the Complaints add up to competitive conduct that is encouraged by the antitrust laws and the Complaints should therefore be dismissed.

# II.  ARGUMENT

## A.  Plaintiffs' Opposition Does Not Explain How The Complaints Allege Facts That Support Plaintiffs' Extreme and Implausible Conclusions.

Zuffa's Motion to Dismiss showed that the Complaints failed to allege specific facts supporting their conclusory allegations of anticompetitive conduct and other elements of the

1

Zuffa's Reply                                Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss                    5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

subject claims. Rather than point to specific facts that support their conclusions or address the discrepancy between their allegations and the judicially noticeable facts regarding their own activities, Plaintiffs instead choose to double down on repetition of their unsupported conclusions. Repeating conclusory allegations does not meet the pleading standards established by the Supreme Court and the Ninth Circuit. Because discovery in an antitrust case is expensive and burdensome, often massively so, courts must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558. Thus, allegations must answer with specificity the "basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Loaded, conclusory rhetoric about the alleged effects, but not the actual terms of Zuffa's contracts, fail to answer those "basic questions" with the requisite specificity.

To illustrate, the following are examples of key points from the Motion that Plaintiffs either ignore or attempt to deflect without engaging: (1) Plaintiffs do not explain how the allegation that their contracts prevent them from working with UFC rivals "perpetually" is plausible when (a) they do not plead the contract terms that allegedly dictate that result, and (b) state athletic commission records show that it is not true — they fought for rival promoters after their UFC experience (Mot. at 5-6, nn.4-8); (2) the Complaints do not explain how an exclusive contract between Zuffa and a sponsor, such as a beer or apparel company, prevents competitors from obtaining sponsorship deals with the countless other beer and apparel companies (Mot. at 15-16); (3) the Complaints do not explain how an exclusive deal with one television outlet prevents competitors from working with the hundreds of other television outlets in the United States — particularly when their own allegations show that at least four rival promoters have secured broadcast and/or PPV television distribution (Mot. at 7); and (4) they do not explain how (a) the contractual provisions relating to Zuffa's and Plaintiffs' intellectual property rights prevented UFC rival World Series of Fighting ("WSOF") from using the names and likenesses of Plaintiffs Jon Fitch and Dennis Hallman to promote a WSOF event featuring those two fighters, or (b) how the contractual language would have mandated that result (Mot. at 5 & n.4). Without some response to these points, Plaintiffs have not shown that their conclusions

2

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

of anticompetitive conduct are supported by specific facts.

Plaintiffs argue that Zuffa has gone beyond the four corners of the Complaints in requesting judicial notice of facts that are both contrary to the conclusions alleged in the Complaints and within the personal knowledge of the plaintiffs, notably that many of the Plaintiffs – alleged "Elite Professional MMA Fighters" – have fought for competitors, including those whose bouts are nationally televised. Plaintiffs are wrong; courts are not forced to accept as true allegations that are flatly contrary to judicially noticeable facts whose accuracy cannot be reasonably questioned (and, in this case, have not been questioned). *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (on motions to dismiss, courts "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

To be clear, Zuffa is not asking the Court to resolve a factual dispute — the judicially noticeable facts are not disputed. The facts subject to Zuffa's unopposed request for judicial notice simply demonstrate that the Complaints are not sufficient because they lack plausible support. Courts in this District routinely dismiss complaints because allegations "contrary to facts that are a proper subject of judicial notice" are 'implausible.'" *E,g., Boisvert v. Li*, No. 13-CV-01590 NC, 2014 WL 279915, at *6 (N.D. Cal. Jan. 24, 2014); *Barsky v. Spiegel Accountancy Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *5 (N.D. Cal. Feb. 11, 2015) (rejecting as "not plausible" allegation contradicted by document subject to judicial notice); *Acosta v. Wells Fargo Bank, N.A.*, No. C 10-9910JF (PVT), 2010 WL 2077209, at *4 (N.D. Cal. May 21, 2010) (rejecting "implausible" allegation "[i]n light of [plaintiff's] complaint as a whole and documents of which the Court may take judicial notice").

**1.  Plaintiffs' "Monopoly Broth" Theory Does Not Absolve Plaintiffs of Adequately Pleading Facts Showing Anticompetitive Conduct.**

Plaintiffs' Opposition focuses not on identifying or explaining the alleged facts that show the alleged conduct is anticompetitive in nature, but on arguing that the entire mix of allegations, viewed as a whole, is sufficient to carry the day. Opp. at 12, 15, 16, 20. But "monopoly broth" theories do not relieve plaintiffs of the requirement to plead specific facts showing that each act

3

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

and the acts together alleged to be part of the scheme are both anticompetitive and contribute to substantial foreclosure of competition in the relevant market. *City of Groton v. Conn. Light & Power Co.,* 662 F.2d 921, 928-29 (2d Cir. 1981); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 513 F. Supp. 1100, 1310-11 (E.D. Pa. 1981) (*Continental Ore Co. v. Union Carbide & Carbide Corp.,* 370 U.S. 690 (1962) does not prevent courts from analyzing the individual allegations; "it is clear that by merely intoning the magic words . . . 'totality of the evidence' antitrust plaintiffs cannot foreclose critical analysis"). Even where a plaintiff argues that its allegations are "interrelated and interdependent," a court must still "analyze the various issues individually." *City of Groton*, 662 F.2d at 928. Courts "reject the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of section 1 or section 2 of the Sherman Act." *Id.* at 928-29.

Moreover, a "monopoly broth" theory of Section 2 liability "does not allow for clearly legal acts to be thrown into the mix to bolster a plaintiff's antitrust case." *Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP, 2004 WL 5907538, at *5 (C.D. Cal. June 10, 2004) (citing *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1378 (9th Cir. 1992)). For example, Plaintiffs' repeated allegations regarding the UFC's refusal to co-promote with rivals or to allow its name or brand to be used to promote competitors' events cannot be considered part of an alleged anticompetitive scheme because such conduct is clearly legal. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004); *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 (9th Cir. 1981).

In short, "[c]laims are not subject to aggregation when there is no cardinal unit in one that can be added to any unit in another to produce a meaningful sum." II Areeda & Hovenkamp, Antitrust Law, ¶ 310c2 (4th ed. 2014); *Zenith*, 513 F. Supp. at 1310-11 ("Nothing plus nothing times nothing still equals nothing").[1]

### B. Plaintiffs' Allegations Are Inadequate to Plead That the UFC's Conduct Resulted in Substantial Foreclosure.

In its opening brief, Zuffa showed that, to state a claim based on exclusive dealing, the

---

[1] Daniel Crane, *Does Monopoly Broth Make Bad Soup?* 76 Antitrust L.J. 663 (2010).

4

defendant's arrangements must "foreclose competition in a substantial share of the line of commerce affected," that is, they must "bar a substantial number of rivals or severely restrict the market's ambit" (Mot. at 11) (citing cases; internal quotations omitted), and that Plaintiffs have not alleged facts showing *any* foreclosure of rival promoters, much less *substantial* foreclosure (Mot. at 12-16). Remarkably, despite the five competing promoters mentioned in the Complaints, and the two unmentioned active promoters, WSOF and BAMMA, for whom Plaintiffs fought after leaving the UFC, Plaintiffs respond by claiming that they alleged foreclosure of "100%" of the alleged market because they have alleged that all competitors are the "minor leagues" lacking in "Elite" fighters. Opp. at 13, 18. Thus, the entirety of Plaintiffs' foreclosure argument is based on circular claims that (A) all fighters under contract with the UFC are "Elite"; (B) few or no fighters not under contract with the UFC are "Elite"; and, therefore, (C) UFC contracts foreclose access to 100% of Elite fighters. Again, implausible conclusions based on subjective characterizations such as "minor leagues" and "elite" are insufficient to allege foreclosure at all, much less market-wide foreclosure. Allegations that other competitors are smaller, pay fighters less, or are not as popular as the UFC are equally insufficient. Plaintiffs must show that Defendant's alleged anticompetitive conduct substantially foreclosed competition. *Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*, No. C 08-01035 JSW, 2008 WL 4830740, at *2 (N.D. Cal. Nov. 6, 2008) (allegations of large market share are not a substitute for plausible allegations of foreclosure in the relevant market).

**1.     Plaintiffs Have Not Pled Facts Showing That Contracts with Fighters Foreclosed Competition.**

Plaintiffs' Complaints and Opposition posit the similar circular argument that "[b]ecause no rival promoters can offer Elite bouts, Elite MMA Fighters cannot sell their services to anyone other than the UFC," Opp. at 14. But in claiming that the UFC has foreclosed 100% of the market for Elite Professional MMA Fighter Services, Plaintiffs pointedly ignore that Zuffa's unopposed request for judicial notice shows that *not even 100% of Plaintiffs*, let alone 100% of *all* allegedly "Elite Professional MMA Fighters," are unavailable to rival MMA promoters. Mot. at 5-6, nn.4-8. Plaintiffs also ignore that these undisputed facts eviscerate their implausible claim that fighters are locked up "indefinitely" and "perpetually." Opp. at 3, 12. Plaintiffs point out

5

that "a rival promoter needs more than a single Elite Fighter" to compete. Opp. at 16. Within the tiny universe of allegedly "Elite" fighters named in the Complaints, there are no fewer than seven who have fought for at least four different rival promoters. Mot. at 5-6, nn.4-8. And, even under Plaintiffs' logic, if "Elite" fighters are available and can sell their services to rivals, rivals can (and do) stage "Elite bouts."

Plaintiffs' argument that foreclosure is a fact issue that does not need to be addressed at the pleading stage (Opp. at 13) is wrong and does not justify the real costs of discovery Plaintiffs would impose. "Without allegations as to the portion of the relevant market foreclosed by the exclusive agreement, the length of the agreements, etc., this claim standing alone does not adequately state a plausible exclusive dealing claim under the Sherman Act." *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-cv-04689-WHO, 2014 WL 1677521, at *5 (N.D. Cal. Apr. 25, 2014) (internal quotations omitted). To plead foreclosure, a plaintiff must plausibly allege both the size of the relevant market and the portion of the relevant market allegedly foreclosed to rivals by the defendant. Mot. at 11-12 (citing cases). The complaint must "show a foreclosure coverage sufficient to warrant an inference of injury to competition, depending on the existence of other factors that give significance to a given foreclosure percentage . . . ." *PNY Tech's, Inc. v. SanDisk Corp.*, No. 11-CV-04689-WHO, 2014 WL 2987322, at *10 n.18 (N.D. Cal. July 2, 2014) (granting motion to dismiss); *see also Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2013 WL 5694452, at *11 (N.D. Cal. Oct. 18, 2013) (granting motion to dismiss antitrust claims because plaintiff had not alleged "enough to show the *size of the relevant markets*, let alone the *magnitude* of foreclosure") (emphasis added)). Here, Plaintiffs allege the number of fighters under contract with the UFC, but say nothing regarding the number of fighters available to compete, thus leaving the "magnitude of foreclosure" undefined.[2]

---

[2] Plaintiffs are wrong that *Tele Atlas N.V. v. NAVTEQ Corp.*, 397 F. Supp. 2d 1184, 1190 (N.D. Cal. 2005), absolves of them the responsibility to plead any "specific facts" about their claim. First, *Tele Atlas* was decided before *Twombly* "applied a heightened pleading standard for antitrust claims." *Fox v. Piche*, No. C 08-1098 RS, 2008 WL 4334696, at *2 (N.D. Cal. Sept. 22, 2008) (citing *Kendall,* 518 F.3d at 1047 n.5). Second, the *Tele Atlas* court's distinction between the allegations that were sufficient to state a claim in that case and allegations that were found insufficient in *JM Computer Services, Inc. v. Schlumberger Tech., Inc.*, 1996 WL 241607 (N.D. Cal. 1996), illustrates the inadequacy of Plaintiffs' allegations of foreclosure. In *Tele Atlas*, the

Despite lacking any specific allegations as to the duration of any fighter contracts, Plaintiffs nonetheless claim that "the length of any given contract does not bear on the *cumulative impact* of the Agreements." Opp. at 16. This was *precisely* the argument rejected by the Seventh Circuit in *Paddock Publications, Inc. v. Chicago Tribune Co.*, 103 F.3d 42 (7th Cir. 1996),[3] and that has been rejected by courts in this Circuit. Even exclusive dealing arrangements covering "a dominant share of a relevant market need have no adverse consequences if the contract[s] [are] let out for frequent rebidding." *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12-2102-JST ANX, 2013 WL 3936394, at *2 (C.D. Cal. July 30, 2013) (quoting Areeda, ¶ 1802g2 & n.68 (3d ed. 2011)). The court applied the same reasoning to dismiss antitrust claims in *PNY* where plaintiff claimed that the cumulative effect of defendant's contracts with 11 of 16 retailers foreclosed competition, but where the short duration of those individual contracts did not prevent plaintiff for competing for those contracts upon their termination. *PNY Tech's*, 2014 WL 2987322, at *6. Absent these allegations, Plaintiffs have not pled that their contracts are of sufficient duration to foreclose competition.

Plaintiffs attempt to rebut the point that rival promoters are free to engage in "competition for the contract" with the circular and conclusory claim that Zuffa "eliminated all rival promoters." Opp. at 16-17. They ignore that, even under their amorphous definition, "Elite" fighters include at least: (1) every athlete who *ever* fought in a UFC bout, but whose contract with the UFC has ended; (2) any athlete who has "demonstrated success through competition in local and/or regional MMA promotions"; and (3) any athlete "who has developed significant public notoriety amongst MMA Industry media and the consuming audience through demonstrated success in athletic competition." Le Compl. ¶ 30(d). Neither the Complaints nor

---

court found plaintiff's allegation that a defendant's contracts with an easily ascertainable "finite group of automakers" sufficient to state foreclosure, whereas in *JM Computer*, the plaintiff had not sufficiently plead a claim where it alleged only that the defendant's exclusive deals with an indefinite group of "parts manufacturers" resulted in foreclosure. 397 F. Supp. 2d at 1189-90. In this case, the indefinitely large universe of "Elite" fighters is much closer to the "parts manufacturers" in *JM Computer* than the "finite group of automakers" in *Tele Atlas*.

[3] In *Paddock*, the Seventh Circuit rejected the plaintiff's claim that the "*cumulative effect*" of the agreements violated the Sherman Act. *Pro Search Plus*, 2013 WL 3936394, at *3 (emphasis added) (citing *Paddock Publications*, 103 F.3d at 43). The court held that the group of exclusive agreements did not violate the antitrust laws because the duration of the individual arrangements permitted competitors to bid for those exclusive rights at reasonable intervals. 103 F.3d at 47.

7

Zuffa's Reply                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss              5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Plaintiffs' Opposition shows rival promoters, including those named in the Complaints, as well as others like WSOF and BAMMA (which are conspicuously absent from the Complaints but who have contracted with Plaintiffs), are precluded from competing with the UFC for any of these fighters either before they sign with the UFC or after their contracts end.

Plaintiffs assert that other promoters cannot compete with the UFC because it "is the 'major league.'" Opp. at 18. There is no doubt that the UFC has achieved a reputation as a proven leader in the sport of mixed martial arts, but the antitrust laws do not relieve competitors of the burdens of competition with industry leaders. "We agree with the unremarkable proposition that a competitor with a proven product and strong reputation is likely to enjoy success in the marketplace, but reject the notion that this is anticompetitive. It is the essence of competition." *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997).

### 2. Plaintiffs Have Not Pled Facts Showing That Zuffa's Contracts With Venues, Sponsors, Media Outlets or Others Foreclosed Competition.

Plaintiffs' Opposition repeats without elaboration the vague and conclusory allegations from their Complaints that the UFC uses exclusive agreements to "restrict rivals' access to *key* sponsors, venues, and media outlets." Opp. at 20. But they still do not identify (1) what criteria make sponsors, venues, and media outlets "key"; (2) how many of these "key" sponsors, venues, and media outlets exist; or (3) how many the UFC has allegedly denied to rivals. Without these most basic allegations, Plaintiffs cannot show that the UFC has denied rivals access to any of these inputs.

Plaintiffs attempt to distinguish *Abbyy*, 2008 WL 4830740, because that court found "no foreclosure where a plaintiff failed to 'allege with any specificity any information regarding the types of contracts, the contracting parties, the degree of the market allegedly foreclosed as a result of the [] contracts, or whether alternative channels' were available." Opp. at 14, n.22. Plaintiffs' Complaints fail because of the same defects. Plaintiffs do not allege with any specificity the duration of any of the fighter contracts they complain about; which, if any, "key" venues, sponsors, and television distribution outlets the UFC has allegedly locked up; what other alternative channels are still available; or what percentage of the market those contracts allegedly

8

BOIES SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

foreclose.  In an alleged market at least as large as the United States, it defies common sense to suggest that the UFC *could* foreclose access to a meaningful number of venues or sponsors — "key" or otherwise.  Moreover, Plaintiffs ignore *their own allegations* showing that at least four rival promoters <u>have</u> secured broadcast or television distribution.  Mot. at 7 (citing Le Compl. ¶¶ 141-43, 150; Vazquez Compl. ¶ 149).  Their claims that the UFC denies rivals access to venues and sponsors are too conclusory to be credited and defy the "common sense" that courts must apply in reviewing a motion to dismiss.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### C.    Plaintiffs' Opposition Confirms That Plaintiffs Have Failed to Plead Properly Defined Relevant Markets.

Plaintiffs do not dispute that it is their burden to define a proper, plausible relevant market and that where a plaintiff fails to do so a motion to dismiss may be granted.  *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).  Plaintiffs' Opposition makes clear that Plaintiffs' market definition fails for at least two reasons: (1) it depends on subjective terms that are too vague to provide meaningful guidance of the contours of the alleged market, and (2) the Complaints use a circular definition to define the market as a single brand — UFC fighters.

### 1.    Plaintiffs' "Elite" Market Definitions Are Improperly Subjective and Indefinite.

Plaintiffs cite no case in which a product market was held to be properly defined based on an unmeasurable distinction of quality such as they allege here.  Plaintiffs define an "Elite" fighter as one who has "demonstrated success" in local or regional MMA promotions or who has "developed significant public notoriety among MMA Industry media and the consuming audience through demonstrated success in athletic competition."  Le Compl. ¶ 30(d).  Plaintiffs provide no quantifiable metric of what constitutes an athlete's "demonstrated success" nor a way to quantify an athlete's "significant public notoriety" in order to provide any objective basis to conclude which fighters are Elite and which are not.  As Zuffa explained, market definitions based on subjective quality differences without any objective metric to distinguish what is in and out of the

market are inadequate. Mot. at 17-18; *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1159 (N.D. Cal. 2004) (expressly rejecting plaintiff's product market that attempted to distinguish between qualitative product differences because there was "no 'quantitative metric' that could be used to determine the distinction between a high function product and a mid-market product").[4]

Plaintiffs cite UFC web pages that use the adjective "elite" to describe the organization or its fighters to argue that the distinction between "Elite" and "non-Elite" fighters is understood in the industry. Opp. at 5; Pls. RJN at 3-6. But the common use of a flattering adjective in marketing and promotional materials does not mean that the adjective is an adequate foundation for defining an antitrust market. The same pages also contain a variety of other adjectives to describe the UFC and its fighters, including "premier," "best," "top-ranked," "talented," "highly trained," and so on. *Id. In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988), *aff'd*, 895 F.2d 1417 (9th Cir. 1990) ("The various adjectives used to describe [different] brands of [the product] do not alone establish separate markets").

None of the cases Plaintiffs cite for the proposition that a market can be defined based upon vague quality distinctions (Opp. at 6) define a market based upon the quality of the athletes themselves. Instead, each of the cases defined a market around objective, clearly definable categories such as particular leagues, divisions, or events. *Int'l Boxing Club of N.Y. v. United States*, 358 U.S. 245, 250-52 (1959) (championship boxing contests); *Rock v. Nat'l Collegiate Athletic Ass'n*, No. 1:12-cv-1019-JMS-DKL, 2013 WL 4479815, at *11 (S.D. Ind. Aug. 16, 2013) (Division I football); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 966 (N.D. Cal. 2014) (Football Bowl Subdivision football and Division I basketball).[5] Plaintiffs in those

---

[4] Plaintiffs' explanation of *Oracle* is wrong. It did not, as Plaintiffs would have it, require a trial to determine that SAP and PeopleSoft competed in the same market (Opp. at 8 n.12); that was agreed upon from the outset. *Oracle*, 331 F. Supp. 2d at 1107-08. The disputed issue was whether the plaintiff's market definition that excluded other, smaller competitors could withstand scrutiny. Judge Walker found that it did not. *Id.* at 1158-60. In any event, failure to properly define a relevant market that incorporates all reasonable substitutes is a sufficient reason for dismissal on the pleadings. *Delano Farms Co. v. Cal. Table Grape Com'n*, 623 F. Supp. 2d 1144, 1176 (E.D. Cal. 2009) (dismissal on the pleadings "typically occur in matters involving (1) a failure to attempt to limit a product market to a single brand, franchise institution or comparable entity that competes with potential substitutes or (2) a failure to attempt a plausible explanation as to why a market should be limited in a particular way").

[5] *Clarett v. Nat'l Football League*, 306 F. Supp. 2d 379, 401-02 (S.D.N.Y. 2004) (National

10

Zuffa's Reply                                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss                              5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

cases did not define the relevant market, for example, as "games played by 'Elite' college football players," with "Elite" defined as those who had demonstrated success or gained significant public notoriety.[6]

### 2. Plaintiffs' Opposition Makes Clear They Plead a Circular Single Brand Market

Plaintiffs argue they have not pled a single brand market because they have not "limited their market to just one brand," but instead allege an "Elite" market. Opp. at 7 & n.10. But the Complaints define an "Elite" market in which the UFC is the only player. Le Compl. ¶¶ 5, 8; Opp. at 13. This is simply artful pleading of a single brand market and should be rejected. *Theatre Party Assoc. v. Shubert Organ., Inc.*, 695 F. Supp. 150, 154-55 (S.D.N.Y. 1988) (dismissing plaintiff's complaint which alleged a market of ticket sales to "theater party hits" since this was just "artful pleading" around plaintiff's true allegations "that defendants had a monopoly in the distribution of tickets to Phantom of the Opera," the only "hit" that year).

Plaintiffs' attempt to narrow the market to the scope of the challenged restraint (Opp. at 7 ("Virtually all Elite MMA Fighters are in the UFC only because it has excluded rivals *through its anticompetitive conduct*")) is similarly impermissible. *See Adidas Am., Inc. v. NCAA*, 64 F. Supp. 2d 1097, 1102 (D. Kan. 1999). "[A]n antitrust plaintiff may not define a market so as to cover only the practice complained of, this would be circular or at least results-oriented reasoning." *Id.*; *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 106 F. Supp. 2d 406, 413 (N.D.N.Y. 2000) (rejecting an "artificially narrow market which is defined essentially in terms of the practice of which they complain").

Moreover, the Opposition flatly contradicts itself in denying that Plaintiffs alleged a single brand market, while at the same time alleging that every other competitor is "minor league" and

---

Football League); *In re NCAA I-A Walk-on Football Players Litig.*, 398 F. Supp. 2d 1144, 1150 (W.D. Wash. 2005) (walk-on football players at Division I-A schools); *Ass'n for Intercollegiate Athletics for Women v. Nat'l Collegiate Athletic Ass'n*, 558 F. Supp. 487, 497 (D.D.C. 1983) (men's and women's intercollegiate athletics).
[6] Statements made by Zuffa's President that its competitors are "minor leagues" (Opp. at 5) do not relieve Plaintiffs of the obligation to plead a market that includes all reasonable substitutes, even if Zuffa's President does not think highly of these substitutes.

BOIES SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S · S C H I L L E R · & · F L E X N E R · L L P
O A K L A N D · C A L I F O R N I A

1   therefore not in the same market.  Opp. at 13 ("Plaintiffs allege the UFC's scheme foreclosed *all*

2   competition for Elite MMA Events—100%—and relegated all rivals to the 'minor leagues.'"

3   (citing *Le* Compl. ¶ 8)); Opp. at 8 n.12 ("Here, the UFC has no competitors").

**D.      Plaintiffs Have Not Alleged Facts Plausibly Showing That the Grant of Ancillary Rights Caused Anticompetitive Harm.**

6       In its opening brief, Zuffa showed that the Complaints do not allege facts showing the

7   "identity rights" provisions alleged to be anticompetitive (1) go beyond Zuffa's legal right to

8   protect its copyright, trademark, and other intellectual property rights in its content and the UFC

9   name and brand, or (2) reduced competition in the alleged relevant markets.  Mot. § IV.C.  The

10  Complaints and Motion make clear that Plaintiffs are free to make use of their identity rights

11  outside of their association with UFC intellectual property (Mot. at 21-22 & n.11; Le Compl. ¶

12  30(s), (t), (u)), and Plaintiffs' Opposition does not dispute it.  Nor does the Opposition deny that

13  Plaintiffs used their identity rights to promote their fights for rival MMA promoters.  Mot. 5-6 &

14  nn.4-8.[7]  Instead, Plaintiffs only repeat the conclusory allegation that the UFC's rights prevent

15  Plaintiffs "from promoting themselves to rival promoters" — without any explanation, factual or

16  otherwise, as to how this occurs or why it did not occur when they fought for rivals.  Opp. at 19.

17  Under *Twombly*, this is not enough.  *Nat'l Assoc. of Freelance Photographers v. Assoc. Press*,

18  No. 97 Civ. 2267(DLC), 1997 WL 759456, *10 (S.D.N.Y. 1997) ("Absent allegations suggesting

19  how [plaintiffs'] ability to compete has been hampered, or facts documenting such hindrances and

20  the revenue [plaintiffs] have lost or will continue to lose, the plaintiffs' antitrust claims resemble

21  only a rote inventory of key words and phrases from an antitrust hornbook").

22      Second, Plaintiffs argue that intellectual property rights are not necessarily a defense to

23  anticompetitive conduct, such as the cartel agreement among competitors in *In re NCAA Student-*

24  *Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d 996 (N.D. Cal. 2013).  Opp. at 19.

25  But this begs the question because a firm's refusal to allow a competitor to use intellectual

26  _____

27  [7] Plaintiffs' discussion of *Washington v. NFL*, 880 F. Supp. 2d 1004 (D. Minn. 2012), misses the mark.  Opp. at 19, n.29.  To the extent Plaintiffs' "individually identifiable" identities are valuable outside the association with UFC IP rights, they are free to exploit them.  *Washington*

28  merely questioned whether a market for such identity rights would exist.  *Id.* at 1007.

12

Zuffa's Reply                          Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss              5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

property cannot be anticompetitive absent a duty to deal, which is not present here. *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1145 (N.D. Cal. 2011) (rejecting plaintiff's argument that a "unilateral refusal to license its intellectual property [] was an antitrust violation . . . . where, as here, there is no evidence of a prior course of dealing"); *Novell v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) ("Forcing firms to help one another" by sharing intellectual property would "risk reducing the incentive both sides have to innovate, invest, and expand— again results inconsistent with the goals of antitrust"). Further, even without the fighters' grant of ancillary rights to Zuffa, competing promoters would be unable to use UFC trademarks or other intellectual property. Mot. at 21-22. Plaintiffs cannot plausibly allege harm to competition in the relevant markets from the restriction of Plaintiffs' identity rights in materials which competitors never had the right to use in the first place. *Id.*

### E.    Plaintiffs Do Not Establish That the Strikeforce Acquisition Has Caused Any Reduction in Competition in the Relevant Output Market.

In its opening brief, Zuffa explained that a Section 2 claim based on an acquisition of a competitor must plead specific facts showing that the acquisition had "the effect of lessen[ing] competition or tend[ing] to create a monopoly." Mot. at 23 (quoting *Carefusion Corp. v. Medtronic, Inc.*, No. 10-CV-01111-LHK, 2010 WL 4509821, at *8 (N.D. Cal. Nov. 1, 2010)). The Opposition points to no specific facts alleged in the Complaints that carry that burden, relying instead on blurbs from ancient cases. Opp. at 20-21. Like most of their arguments, Plaintiffs' attempt to distinguish *Carefusion* by characterizing the Strikeforce acquisition as a "merger to monopoly" is entirely dependent on the conclusion that the UFC is a market unto itself and that other promoters, including the seven competitors identified in the Complaints and RJN, do not compete with Zuffa. Opp. at 24 & n.37. As explained above, this claim is not plausibly supported by the Complaints.[8] Further, new entry in the market also demonstrates that Plaintiffs'

---

[8] Plaintiffs are wrong that the Strikeforce acquisition restarted the expired statute of limitations for acquisitions or contracts executed outside the limitations period. A plaintiff "cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 181 (1997). The "continuing violation" exception that may apply when defendants continue to make sales

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   allegations show, at most, that the Strikeforce acquisition "temporarily diminished the number of

2   competitors," a condition attendant to every acquisition. *United States v. Syufy Enters.*, 903 F.2d

3   659, 664 (9th Cir. 1990). "'[W]hen faced with two possible explanations, only one of which can

4   be true and one of which results in liability, plaintiffs cannot offer allegations that are "merely

5   consistent with" their favored explanations but are also consistent with the alternative

6   explanation.'" *Pro Search Plus*, 2013 WL 6229141, at *3 (quoting *In re Century Aluminum Co.*

7   *Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

8       **F.      Plaintiffs' Claim That They Adequately Alleged Anticompetitive Effects and**
            **Antitrust Standing Is Incorrect.**

9

10      Plaintiffs claim that the alleged scheme had the following anticompetitive effects:

11   (1) "reduced competitiveness of Elite MMA Events"; (2) "suppressed output of Elite MMA

12   Events"; (3) caused "higher gate and PPV ticket prices for Elite MMA Events"; and (4)

13   "suppressed compensation for Elite MMA Fighters." Opp. at 22-23. But of these four, the only

14   one for which Plaintiffs have posited an arguable theory of injury and damages, and thus any

15   potential to claim standing is the fourth. Le Compl. ¶¶ 1, 169. But the allegations supporting this

16   claim of harm are ephemeral and not sufficient to show that Plaintiffs have antitrust standing.[9]

17      Plaintiffs cannot establish antitrust standing simply by claiming that their contract terms

18   somehow unfairly restricted them, forced them to grant rights they did not wish to grant, or

19   otherwise "suppressed" their compensation. They must also allege direct causation between the

20   _____

21   pursuant to a price-fixing agreement has no applicability to a completed acquisition; if it did, the
     statute of limitations could rarely be applied in antitrust cases. *Allen v. Dairy Farmers of Am.,*
22   *Inc.*, 748 F. Supp. 2d 323, 349 (D. Vt. 2010) ("Although the every-purchase-equals-a-new-
     violation-theory is applicable to Plaintiffs' price fixing claims in Count VI, it has no independent
23   application to Plaintiffs' remaining claims which allege illegal acts and agreements in a vertical
     conspiracy to restrain trade"); *cf. In re Animation Workers Antitrust Litig.*, No. 14-CV-04062-
24   LHK, 2015 WL 1522368, at *13 (N.D. Cal. Apr. 3, 2015) ("the Court is not persuaded that
     Plaintiffs' 'price-fixed compensation' theory, as put forth in Plaintiffs' opposition, satisfies the
25   'overt act' requirement" of the continuing violation doctrine) (citing *Pace Indus. v. Three Phoenix*
     *Co.*, 813 F.2d 234, 237 (9th Cir. 1987)).
26   [9] In *Spinelli v. NFL*, --- F. Supp. 3d ---, No. 13 CIV 7398 (RWS), 2015 WL 1433370 (S.D.N.Y.
     Mar. 27, 2015), sports photographers brought antitrust claims against the NFL and its licensors
27   claiming that an unlawful conspiracy artificially suppressed royalties for their photographs. *Id.* at
     *16. But the court held that "underpayment of royalties is not an antitrust injury because it has no
28   adverse effect on competition or consumers." *Id.* Because "Plaintiffs' alleged injury amounts to
     personal economic loss, Plaintiffs have failed to allege antitrust injury." *Id.* (listing cases).

14

Zuffa's Reply                          Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
ISO Mot. to Dismiss                    5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

alleged restraint on competition in the relevant market and their injury.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1058 (9th Cir. 1999).[10]  Neither Plaintiffs' Complaints nor their Opposition explain, much less allege facts showing, how Zuffa's unilateral negotiation of contracts retaining the "identity rights" that enable it, for example, to replay footage of past bouts, or the contractual restrictions on the use of its own name and brand, improperly prevent or impede other promoters from staging and promoting bouts with any fighter not then under contract with the UFC.  Without that, Plaintiffs have not pleaded the factual basis for the direct connection between the alleged anticompetitive acts and the alleged antitrust injury and are left with just the rhetorical but empty claim that the Defendant "expropriated and exploited" (i.e., licensed and used) their IP rights.

## III.  CONCLUSION

For the foregoing reasons and for the reasons stated in Zuffa's opening brief, this Court should dismiss Plaintiffs' Complaints.


Dated: May 1, 2015                    Respectfully Submitted,

                                      BOIES, SCHILLER & FLEXNER LLP



                                      By: */s/ William A. Isaacson*
                                            William A. Isaacson
                                            *Attorneys for Defendant* Zuffa, LLC, d/b/a
                                            Ultimate Fighting Championship and UFC

---

[10] The cases cited by Plaintiffs on this point involve horizontal conspiracies in which competitors allegedly agreed not to compete in order to suppress wages or payment for rights.  *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1110 (N.D. Cal. 2012*); In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d 996, 998; *Doe v. Ariz. Hosp. and Healthcare Assoc.*, CV 07–1292–PHX–SRB, 2009 WL 1423378, at *1 (D. Ariz. Mar. 19, 2009).  They did not involve the kind of complex chain of causation as alleged here where defendant allegedly foreclosed opportunities for competitors, which in turn reduced competitors' ability to compete, which then reduced the competitive pressure on the defendant, leading to the defendant to purportedly pay lower compensation than it would have otherwise.  In the fourth case, *Safeway Inc. v. Abbott Labs.*, the alleged injury was supracompetitive prices paid by direct purchasers of the product, a common antitrust injury.  761 F. Supp. 2d 874, 897 (N.D. Cal. 2011).

15

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A